## MUSICAL INSTRUMENT SALES CO. v. ANDERSON, Collector of Internal Revenue.

### No. 58.

Circuit Court of Appeals, Second Circuit.

April 7, 1930.

Greene & Hurd, of New York City (Robert C. Cooley, of Springfield, Mass., and James L. Dohr and Malcolm C. Law, both of New York City, of counsel), for plaintiff-appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellant.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question for determination on this appeal is, What is the proper amount of invested capital of the plaintiff, Musical Instrument Sales Company, for the purpose of calculating excess profits taxes for the years

1917 and 1919? The plaintiff contends that it is $504,814.85, consisting of:

(1) $200,000, representing cash paid in for stock in 1912 and 1913.

(2) $139,814.85, alleged to represent paid-in surplus created by a cash contribution on the part of a stockholder to its invested capital in 1914.

(3) $165,000, representing either (a) paid-in surplus arising by a cash contribution on the part of its stockholders in 1914, or (b), in the alternative, cash paid in for shares in 1914.

The defendant argues that the invested capital is only the $165,000, paid in by stockholders in 1914, and computes invested capital as though plaintiff had been originally organized in 1914 at the time this sum was contributed to the corporate treasury.

The Commissioner of Internal Revenue computed the invested capital at $165,000, and his decision was sustained by the Board of Tax Appeals prior to the passage of the Revenue Act of 1926, § 1001 (26 USCA § 1224), providing for direct appeals to the Circuit Court of Appeals. Thereupon the tax was paid by the plaintiff, under protest, and this action was brought against the collector to recover. The trial judge held that the invested capital as properly computed amounted to $200,000, plus $165,000, but did not include the item of $139,814.85, supra. From a judgment based on this computation, each party appeals.

The plaintiff in this case had issued its capital stock in the amount of $200,000 for cash. Its business was furthering the sale of pianos and piano parts manufactured by companies in which one Charles Kohler had a large stock interest and also the sale of products of the Victor Talking Machine Company. It had contracts with department stores controlled by John Claflin, where the pianos and other instruments were being sold, providing that a certain minimum number of these instruments should be sold. These contracts were backed by Mr. Kohler with his personal guaranty to the extent of about one million dollars. His sudden death in 1913 left his estate subject to these guaranties. In order to get rid of the obligations, Lawrence, one of his executors, contracted with the plaintiff to take over and liquidate its assets, other than its good will, to assume its obligations, and to transfer to John Claflin its $200,000 of capital stock issued and outstanding, and the latter agreed to use his best efforts to push the sales of pianos manufactured by the Kohler Companies. This arrangement was calculated to relieve the Kohler estate of the liability on its guaranties, to continue the services of the plaintiff in promoting the sales of pianos manufactured by the companies in which the Kohler estate was a large stockholder, and to benefit Claflin's companies by enabling them to earn the large commissions which they had been receiving on sales of the plaintiff's goods.

Claflin went into the hands of a receiver shortly after the agreement was made, but some of the Claflin companies at once stepped into his shoes. They received, through Lawrence, 1,650 of the 2,000 shares of stock of the Musical Instrument Sales Company, and paid $165,000 into the latter's treasury. The remaining 350 shares were turned over by Lawrence to the plaintiff, and were carried, and still remain, as treasury stock. Lawrence, in meeting the obligations which he assumed for the benefit of the Kohler estate, paid out $139,814.85 more than was realized from the assets which he received.

The Board of Tax Appeals found that the foregoing transactions amounted to a liquidation of the Musical Instrument Sales Company; that their effect was essentially to terminate the original company and to extinguish its invested capital; that the 1,650 shares of stock issued to the Claflin Companies were not received by way of transfer from the former stockholders, but were, in substance, an original issue made after the liquidation of the company. Upon this theory, the only invested capital was found to be $165,000. But the company had never ceased to do business. It always sold pianos, even upon the sale to Lawrence under the contract there was a contemporaneous purchase by it from Lawrence at cost of the pianos on hand.

It is contended by the plaintiff that the stock certificates for the 1,650 shares of stock passed directly from the old stockholders to the new. The Board of Tax Appeals, on the other hand, found that this transaction was effected (at least in law) through the Musical Instrument Sales Company by a donation of the stock from the original stockholders to the treasury of the company and a subsequent issue of the same by the company to the new stockholders. In our opinion, it makes no difference which method was really adopted. The books of the plaintiff designated the entire 2,000 shares received from the original stockholders as treasury stock, and the 350 shares which were not reissued seem to be in this category and to fortify the finding of the Board of Tax Appeals as to the entire 2,000 shares.

Lawrence, in an affidavit filed in respect to federal income and profits taxes, stated that it was agreed by the executors of the estate of Kohler that they would, through a representative to be selected by them, in order to make a settlement of the estate, take over all of the assets of the plaintiff, other than its good will, and, in return for such transfer, would pay all its outstanding obligations without holding it responsible to them for any deficiency of assets to the amount of the obligations paid, and that it was also agreed by the executors, together with the stockholders of the plaintiff, that, as a part of the settlement, they would donate to the corporation all shares of stock held by them for the use and benefit of the corporation. Lawrence made the further statement in his affidavit:

"The settlement agreements were made as of, or about June 1, 1914. On account of the large sums which had been expended in equipment for the special departments for the Musical Instrument Sales Company's products, the expense of which had been in a large proportion assumed by the Musical Instrument Sales Company and which obligations were to be met in the settlements agreed upon, it was felt by the various stores that, if the Musical Instrument Sales Company could be supplied with a reasonable amount of cash capital, the value of the equipment, for which, in large part, it had paid, could be used to revive the business of the Company. Accordingly, a proposition was made to the Musical Instrument Sales Company by third parties, according to which it was agreed that, if the Musical Instrument Sales Company would resell to them $165,000.00 par value of the capital stock already issued, which had been returned to the Company by the various stockholders formerly associated with Charles Kohler, such parties would purchase said stock at par to the extent of $165,000.00. Accordingly, such stock was resold for $165,000.00 cash, paid into the treasury of the Musical Instrument Sales Company, and the business of the Musical Instrument Sales Company was revived and continued thereon, Mr. Charles Alfred Wagner, who had formerly been associated with Mr. Kohler and myself as a stockholder and officer, remaining with the Musical Instrument Sales Company thereafter."

■ Under the foregoing circumstances, there can be no doubt that $165,000 represented invested capital, whether it be regarded as cash paid for an original issue of stock by a company newly born, or as paid in surplus contributed by stockholders to a going concern which already had $200,000 of invested capital. Section 207 (a) of the Revenue Act of 1917, 40 Stat. 306 and section 326 (a) of the Act of 1918 (40 Stat. 1092) each would require this result. We do not understand that the finding of the Board of Tax Appeals that the $165,000 is "invested capital" is questioned by any party to this appeal. La Belle Iron Works v. United States, 256 U. S. at page 380, 41 S. Ct. 528, 65 L. Ed. 998.

Section 207 (a) of the Act of 1917 provides that "invested capital" means:

"In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid-in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year. * * *"

Section 326 (a) of the Act of 1918 provides:

"That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section):

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus * * *

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year. * * *"

■ The question remains whether $200,000 and $139,814.85 are to be regarded as "invested capital" under the foregoing statutes. If, as we find, the corporation was never legally liquidated but always remained in business, the $200,000 capital against which its stock was issued was not reduced by its op-

erating deficits, but remained an item of its "invested capital" for the purpose of calculating a profits tax. This has been repeatedly held. Valdosta Grocery Co., 2 B. T. A. at page 729; Guarantee Construction Co., 2 B. T. A. at page 1151; Columbia Theatre Co., 3 B. T. A. 622; Gould Coupler Co., 5 B. T. A. at page 517. The Supreme Court recognized this rule in Willcuts v. Milton Dairy Co., 275 U. S. 215, 48 S. Ct. 71, 72 L. Ed. 247, where Valdosta Grocery Co., and Gould Coupler Co., supra, are cited, and the tax was based upon a reported paid-in capital of $145,817.04, though an operating deficit had impaired it to the extent of $70,296.12. The impairment cannot be material, because the statute calls for a profits tax calculated in view of the cash paid in and not the value which may remain. And the decision in La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998, is in accord with this construction, where the court refused to allow an increased value of assets against which its stock was originally issued as part of its "invested capital." Article 860 of Regulations 45, referring to "invested capital" under section 326 (a) of the Revenue Act of 1918 (40 Stat. 1092), is to the same effect, and provides as follows:

"*Impairment of Capital.*—Capital or surplus actually paid in is not required to be reduced because of an impairment of capital in the nature of an operating deficit, except where there has been directly or indirectly a liquidation or return of their investment to the stockholders in which case full effect must be given to any liquidation of the original capital."

Furthermore article 861 of Treasury Regulations 45 would seem to show that, under departmental rulings, stock donated by the original stockholders to the company did not cease to be part of its invested capital. It reads thus:

"*Surrender of Stock.*—Where stock which has originally been issued or exchanged by the corporation for property (tangible or intangible) is returned to the corporation as a gift or for a consideration substantially less than its par value, the stock so returned shall not be treated as a part of the stock issued or exchanged for such property. The proceeds derived in cash or its equivalent from the re-sale of the stock so returned shall, however, be included in computing invested capital."

It is contended that the item of $139,-814.85, which Lawrence, acting for the estate of Kohler, paid in excess of the value of the tangible assets which he received, stands in pari materia with a contribution by a stockholder for the "purpose of creating an actual excess capital over and above the par value of the stock." La Belle Iron Works v. United States, 256 U. S. at page 389, 41 S. Ct. 528, 531, 65 L. Ed. 998. Where a corporation owes money to its stockholders' and they have canceled that indebtedness, it has been held that the "invested capital" of the corporation is increased from the date of the cancellation by the amount canceled. The Parisian, 2 B. T. A. 415. But the situation here is not analogous. The estate of Kohler obtained the assets of the plaintiff, other than its good will, in consideration for the assumption of its liabilities. As part of the arrangement, the Claflin Stores contributed $165,000 to the company for needed working capital. The Kohler estate not only thus secured freedom from its guaranties, but obtained an agency in the person of the plaintiff which would continue to buy the product of the piano companies in which it had a large interest. It thus obtained an output for these companies without the necessity that Kohler was under in his lifetime of guaranteeing and practically financing the sales. It is apparent that such a situation is entirely different from one where a stockholder simply forgives an indebtedness of his corporation. It did not merely cancel a claim and leave money loaned as capital of the company, but it purchased its own freedom from its guaranty and obtained in exchange valuable business rights. It wiped out a deficit, but contributed no paid-in surplus to the plaintiff. An item cannot be regarded as paid-in surplus for the purpose of creating "invested capital" when the sum paid in was less than sufficient to make good the impairment of capital stock. Surplus can only be such after capital ceases to be impaired. Willcuts v. Milton Dairy Co., 275 U. S. 215, 48 S. Ct. 71, 72 L. Ed. 247. The item of $139,814.85 was properly treated as no part of plaintiff's "invested capital."

The judgment is affirmed.