## C. L. DOWNEY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13836.

United States Court of Appeals
Eighth Circuit.

Feb. 23, 1949.

Maurice Walk, of Chicago, Ill., for petitioner.

Morton K. Rothschild, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and A. F. Prescott, Sp. Assts. to Atty. Gen., for respondent.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The Petitioner, C. L. Downey Company, is an Ohio corporation, having its principal place of business at Hannibal, Missouri. It seeks review of a decision of the Tax Court of the United States, 10 T.C. 837, involving its income and excess profits taxes for the taxable years 1942 and 1943.

The issues decided by the Tax Court and to be reviewed here, are: (1) Whether the Commissioner erroneously disallowed, as borrowed invested capital for each year, $28,000 representing a claimed loan to the

taxpayer by the Hannibal Chamber of Commerce; and (2) whether the Commissioner erred in eliminating from the depreciable base the sum of $25,000 made available by the Chamber of Commerce for use in the construction of its factory.

The facts are not in dispute.

On April 2, 1941, petitioner entered into a written Agreement with the Chamber of Commerce of Hannibal, Missouri. The construction and application of the Internal Revenue Code to the provisions of this agreement and its performance by the parties constitute the basis of this controversy.

The agreement recited that petitioner was located at Cincinnati, Ohio, and was desirous of changing its location, and that the Chamber of Commerce had for some time been endeavoring to have it locate its plant at Hannibal, Missouri.

It was stipulated in the agreement:

1. That the Chamber would cause to be conveyed to the petitioner land on which to construct a manufacturing plant.

2. That petitioner would construct a factory building thereon at a cost of approximately $50,000.

3. That the Chamber would procure for petitioner a loan of $25,000 to be evidenced by petitioner's note secured by a first deed of trust on the land.

4. That the Chamber would secure by popular subscription the sum of $28,000 within thirty days, $3,000 of which should be used for the purchase of the land and $25,000 to be applied to the cost of constructing the factory building.

5. It was then provided that petitioner should secure the $28,000 loan by the execution of a promissory note secured by a second deed of trust on the real estate and the improvements thereon, the note to be payable to the Chamber of Commerce and due eight years from the date of the agreement. The agreement then provided:

"Should the said Company (petitioner) pay out to its officers and employees engaged in its factory operated in Hannibal, Missouri, in wages, salaries and emoluments over a period of seven and one-half years, or a lesser time, beginning with the date of its operation in Hannibal, Missouri, the sum of $500,000, * * * then said note shall be cancelled and the second deed of trust shall be released of record."

The terms of the agreement were complied with by both parties. The petitioner's payroll between the date of the agreement and the close of the calendar year 1945 exceeded $500,000, and prior to the close of 1945 the note for $28,000 and the second deed of trust securing it were cancelled by the Chamber of Commerce and returned to petitioner.

Two deductions claimed by the petitioner in its income tax returns for the taxable years were not allowed by the Commissioner:

1. In the deficiency notice the Commissioner disallowed as equity invested capital the $28,000 evidenced by the second deed of trust and note and allowed no part thereof as borrowed capital.

2. The building erected by the petitioner pursuant to the terms of the agreement has an estimated life of 50 years from January, 1942. The petitioner in its income tax return for 1942 claimed depreciation on a cost of $47,451.07. The Commissioner in the deficiency notice disallowed depreciation on $25,000, which is that portion of the cost received from the Chamber of Commerce and secured by the second deed of trust which was cancelled in 1945 in accordance with the terms of the agreement for the reason that petitioner's payroll at that time exceeded $500,000.

The Tax Court affirmed.

First, did the $28,000 received by the petitioner from the Chamber of Commerce and secured by a second deed of trust on its property represent invested borrowed capital of the taxpayer within the meaning of the statute notwithstanding the secured note was subject to a condition subsequent resulting in its cancellation?

The petitioner argues that this question must be answered in the affirmative because (a) the cash was received on petitioner's unconditional promise to pay; (b) in case of default when due petitioner was liable to foreclosure and sale of the premises and to a deficiency judgment; and (c) cost consists in the exposure of the fund

raised on the note to the business risks of the enterprise.

The applicable provisions of the statute, 26 U.S.C.A. § 719, reads:

"Sec. 719. Borrowed invested capital

"(a) Borrowed capital. The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

"(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, plus, * * *

"(b) Borrowed invested capital. The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day."

The decisive question here is whether the note and deed of trust in question represented an "outstanding indebtedness" of the petitioner in 1942 and 1943 within the meaning of Sec. 719(a) (1). In the case of Gilman v. Commissioner, 8 Cir., 53 F.2d 47, 50, 80 A.L.R. 209, this court said: "The term 'indebtedness' as used in the Revenue Act implies an unconditional obligation to pay. Any definition more flexible would only encourage subterfuge and deception." And, further, "While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened, the term 'debt' being opposed to 'liability' when used in the sense of an inchoate or contingent debt." This definition has been approved and applied in Johnson v. Commissioner, 8 Cir., 108 F.2d 104; Commissioner v. Park, 3 Cir., 113 F.2d 352; Autenreith v. Commissioner, 3 Cir., 115 F.2d 856; Canister Co. v. Commissioner, 3 Cir., 164 F.2d 579. Compare, also, Consolidated Goldacres Co. v. Commissioner, 10 Cir., 165 F.2d 542; Frankel & Smith Beauty Department, Inc., v. Commissioner, 2 Cir., 167 F.2d 94. No doubt petitioner owed an obligation to the Chamber of Commerce, "But although an indebtedness is an obligation, an obligation is not necessarily an 'in-

debtedness' within the meaning" of the Revenue Act. Deputy v. DuPont, 308 U.S. 488, 497, 60 S.Ct. 363, 368, 84 L.Ed. 416.

The note involved here provided that "Said note will be satisfied and considered paid by The C. L. Downey Company's compliance with the terms of the contract dated March 31, 1941 * * *." The deed of trust sets forth a copy of the note and provides that "This deed of trust and obligation is made in conformance with and pursuant to a contract between the parties dated March 31, 1941 * * *."

 Although the so-called note and deed of trust represented an obligation of the petitioner they did not represent an "indebtedness" within the meaning of the Revenue Act because the obligation was contingent upon the failure of the petitioner to pay out in salaries and wages at its factory in Hannibal, Missouri, the sum of $500,000 within seven and one-half years. In fact the contingency did not occur, and the obligation was cancelled. It is an established principle that " * * * in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid * * *." Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L. Ed. 420; Capital Warehouse Co., Inc., v. Commissioner, 8 Cir., 171 F.2d 395, 397.

Second, did the $25,000 of the $28,000 represented by the note in question represent an investment in the factory building for the purpose of depreciation within the meaning of the Revenue Act?

26 U.S.C.A. § 114 provides that the basis for depreciation shall be the adjusted basis provided in section 113(b) which refers to section 113(a) which provides that "The basis of property shall be the cost of such property," making specified adjustments which means "cost to the taxpayer." Detroit Edison Co. v. Commissioner, 319 U.S. 98, 102, 63 S.Ct. 902, 904, 87 L.Ed. 1286. In the cited case the court said, "Generally * * * the taxpayer's outlay is the measure of his recoupment through depreciation accruals." In Commissioner v. Arundel-Brooks Concrete Corp., 4 Cir., 152 F.2d

225, 162 A.L.R. 1200, the court, in reliance on the decision of the Supreme Court in the Detroit Edison Co. case, supra, held that the taxpayer was not entitled to depreciation on the total cost of its plant when another corporation had for business reasons contributed $20,000.00 to the cost thereof. Compare Commissioner v. Revere Land Co., 3 Cir., 169 F.2d 469, at pages 475 et seq.

█ That the $25,000 in question was not an investment of the taxpayer in the factory building but was a contribution by the Chamber of Commerce for the public interest which it represented is clear from the record. The Resolution adopted by the Chamber at a special meeting on March 17, 1941, called to consider the contract executed on March 31, 1941, stated:

"Whereas, the Hannibal Chamber of Commerce is authorized to encourage the establishment of manufacturing companies * * * in Hannibal, Missouri, and Whereas, the Industrial Committee has conferred with officials of the C. L. Downey Company * * * and come to a mutual understanding with said company regarding the matter of establishing the main plant of this company at Hannibal, Missouri"; and the contract having been reduced to writing was approved and its execution authorized.

Paragraph "4" of the contract was designed to assure the Chamber of Commerce that the money contributed would be applied to the cost of constructing the factory building. Paragraph 4 reads:

"4. That said Chamber of Commerce, at its own expense, will secure by popular subscription the sum of $28,000.00 within thirty (30) days from the date hereof, $3,000.00 of said sum to be used for the purchase of said lot and the sum of $25,-000.00 to be deposited in some bank or banks in Hannibal, Missouri, in the name of some Trustee to be agreed upon between the parties hereto, said sum to be used and paid out to the general contractor, head-contractor, sub-contractors and material-men for the erection of said building, said sums to be paid out upon certificates from the engineer of the said The C. L. Downey Company, as the work progresses and the approval of the engineer of said Chamber. The C. L. Downey Company shall not assume any expense of said Trusteeship."

Likewise the provision of the contract requiring a note and deed of trust payable on condition that petitioner should fail to pay out $500,000 in salaries and wages during a period of seven and one-half years was intended to protect the Chamber against bad faith of the taxpayer because casualties over which the petitioner had no control were excepted.

For the reasons stated the decision of the Tax Court is affirmed.