## COMMISSIONER OF INTERNAL REVENUE v. BROWN SHOE CO., Inc.

## BROWN SHOE CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 13851, 13852.

United States Court of Appeals
Eighth Circuit.

June 17, 1949.

Rehearing Denied Aug. 8, 1949.

306

Charles B. McInnis, Washington, D. C. (Ernest M. Callomon and Roberts & McInnis, Washington, D. C., on the brief), for Brown Shoe Co., Inc.

Carlton Fox, Special Assistant to Attorney General (Theron Lamar Caudle, Assistant Attorney General, and Ellis N. Slack and Lee A. Jackson, Special Assistants to Attorney General, on the brief), for Commissioner of Internal Revenue.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Two petitions have been filed in this court to review a decision of the Tax Court of the United States entered April 30, 1948, 10 T.C. 291, involving excess profits taxes of the Brown Shoe Company, Inc., for the fiscal years ended October 31, 1942, and 1943. The case was taken to the Tax Court on an appeal by the Shoe Company from the determination of deficiencies by the Commissioner. The issues were submitted to the Tax Court upon a Stipulation of Facts; and the parties have agreed that the petitions may be submitted here on a single record. It will be convenient, therefore, to consider both petitions in one opinion.

The Brown Shoe Company, Inc., is a New York corporation with its principal office at St. Louis, Missouri. It is engaged in manufacturing and selling shoes at several different plants in the states of Missouri, Illinois, Indiana, and Tennessee.

During the period from 1914 to October, 1939, the taxpayer received $885,559.45 in cash and two factory buildings of the aggregate agreed value of $85,471.56 from various community groups in 12 different towns, amounting in all to $971,031.01. In each of these cases, except one involving a donation of $10,000 cash, there was a contract between the taxpayer and the community group. Copies of all such contracts are attached to the Stipulation of Facts. Such contracts varied in some particulars, but generally they required the taxpayer to construct a new factory or to enlarge an existing one in the particular community, to operate it for an agreed period of time, usually 10 years, to employ a stipulated number of employees, and to meet a minimum stipulated pay roll during the period agreed upon.

Usually the contract provided that the cash donated was "to be used for the payment of suitable factory building or buildings and the equipment thereof" and that payment was to be made to the taxpayer "so that the same shall be available for paying for the factory buildings and the equipment thereof as the work progresses thereon."

The contracts further provided that in the event the taxpayer failed to comply with their terms the amount of the cash donation in each case should be refunded, and in the case of the two buildings title was to be transferred back to the donors. In case of compliance with the terms of the contracts, the taxpayer was thereafter free to operate the factories as it desired, or to dispose of the factories and retain the proceeds without obligation to account to the donors.

The cash received by the taxpayer from particular groups was not earmarked for or held intact and applied against the cost of the factory and equipment acquired or constructed in the particular community but was deposited by the taxpayer in its general bank account and debited to cash on the debit side of its ledger and credited to its earned surplus account or, in some cases, to contributed surplus and thereafter transferred to earned surplus.

In its appeal to the Tax Court the taxpayer complained of three acts of the Commissioner in determining deficiencies in its excess profits net income for the taxable years involved.

First, the Commissioner excluded from the taxpayer's claimed equity invested capital the sum of $971,031.01, representing cash and the value of buildings donated by the several community groups where it built new or enlarged existing factories.

Second, the Commissioner disallowed a deduction on account of depreciation claimed by the taxpayer on the two donated buildings valued at $85,471.56; and

Third, the Commissioner disallowed a claimed deduction for depreciation on factories and equipment to the extent of $885,-559.45, which the Commissioner found represented property acquired with donated funds.

The Tax Court affirmed the first and second determinations of the Commissioner, and its decision in these respects is the basis of the complaint in the taxpayer's petition for review. The Tax Court reversed the Commissioner's third determination, supra, and its decision in this respect is the basis of the Commissioner's complaint.

We shall first consider the Commissioner's case. He contends that there is no evi-

dence to support the Tax Court's finding and conclusion that " * * * no justification appears for the action of the Commissioner in disallowing depreciation on buildings, machinery and equipment upon the theory that the petitioner used cash received from the various communities to pay for those buildings and that machinery, and, consequently, the buildings and machinery had, to that extent, no cost to the petitioner. The parties have stipulated that the cash was not earmarked in any way and it is just as reasonable to assume that it was used for any one of a dozen other purposes as it is to make the Commissioner's assumption. The petitioner paid for the buildings and machinery out of its own unrestricted funds, those buildings and that machinery had cost to it, as shown on its books and records, and it is entitled to depreciation thereon."

The "Commissioner's assumption" and the facts referred to by the Tax Court are stated in paragraphs 9 and 11 of the Stipulation of Facts as follows:

"9. * * * The cash when received was deposited in Petitioner's general bank account and debited to Cash on the asset side of Petitioner's ledger. The cost of constructing the buildings and the additions, machinery, etc., was paid from Petitioner's general bank account, and debited to Cost of Buildings, Cost of Equipment, or Cost of Machinery, depending upon the nature of the particular expenditure, for the plant in question. The cash received by Petitioner from a particular community group was not earmarked for or held intact and applied against the cost of the factory, machinery, equipment, or other items applicable to the plant acquired or constructed in the particular community, * * *,

* * * * * *

"11. In every instance the cash received by Petitioner from the community groups * * * was less than the amount expended by Petitioner for the acquisition or construction of the factory building and the machinery of said factory. In determining the amount of depreciation to be disallowed for the fiscal years ended October 31, 1942, and October 31, 1943, attributable to the assets acquired with the contributed cash, Respondent first determined the total cost to Petitioner of the factory building, the land, in instances where land was purchased by Petitioner, and the machinery and he then allocated the cash contribution received by Petitioner from the citizens of the particular community to the cost of buildings, land, in instances where land was acquired, and machinery, in the ratio of the total cost of each of said items to the aggregate cost of all of said items for the particular factory * * *."

■■ In considering the question thus presented by the Commissioner we have jurisdiction to review a decision of the Tax Court in the same manner and to the same extent as we have to review a decision of a district court in civil actions tried without a jury, 26 U.S.C.A. § 1141(a). Upon review there is thus made applicable to the decisions of the Tax Court Rule 52 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. wherein it is stated that "Findings of fact shall not be set aside unless clearly erroneous * * *." A finding of the Tax Court, however, is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746.

■ The question here is "What is the basis for depreciation of the factory buildings and equipment involved?" The Tax Court correctly held that cost is the correct basis. 26 U.S.C.A. § 114. But "cost" means cost to the taxpayer. Detroit Edison Co. v. Commissioner, 319 U.S. 98, 102, 63 S.Ct. 902, 87 L.Ed. 1286. And cost to the taxpayer does not include contributions from others made for business or community interests. Commissioner v. Arundel-Brooks Construction Corp., 4 Cir., 152 F.2d 225, 162 A.L.R. 1200; C. L. Downey Co. v. Commissioner, 8 Cir., 172 F.2d 810.

■ We think the Tax Court committed a clear mistake of law and fact when it concluded that the application of the donated funds to the cost of the factories and machinery depended upon the taxpayer's accounting system, and that upon that basis "it is just as reasonable to assume that it

was used for any one of a dozen other purposes as it is to make the Commissioner's assumption." In the absence of proof to the contrary the only reasonable assumption is that the taxpayer faithfully performed its obligations under the contracts entered into with the community groups that contributed the funds in question. It could do that just as well by depositing those funds in and paying them out of its general bank account as it could by earmarking them in some manner and depositing them in a special account.

Further, the Tax Court's "assumption" in this regard is inconsistent with its further assumption stated in its opinion where it is declared that "It seems proper to assume that the petitioner [taxpayer] fulfilled all conditions attached to the transaction, since neither party suggests contrary." One of the conditions of these contracts was that the cash contributed was "to be used for the payment of suitable factory building or buildings and the equipment thereof * * *", and the taxpayer agreed to construct the building or buildings in accordance with the terms of the contract, obligating "itself to use [the sum donated] for the payment of the constructing of a suitable factory building or buildings and the equipment thereof * * *."

Of course, when the taxpayer deposited such donations in its general account in a bank it augmented its credit balance proportionately, and when it drew checks against that balance to pay for the construction of a factory building the balance was reduced accordingly. Since the buildings and the equipment were all paid for in accordance with the contracts, neither the absence of earmarks on the deposit nor the entry of the transaction in the taxpayer's books supports an assumption that such funds were not applied in good faith to the purposes for which they were received. The decision of the Tax Court assailed by the Commissioner's petition to review must accordingly be and it is reversed.

We now turnt o a consideration of the issues presented by the taxpayer's petition.

Excess profit tax laws came into the internal revenue system of the United States as war measures. The first of such taxes was imposed by the 1917, 1918 and 1921 Acts 40 Stat. 302, 1088, 42 Stat. 271. It provided for levying "War Excess Profit Taxes" upon corporations, partnerships, and individuals. The question presented here arises under the 1940 Act, 54 Stat. 975, 26 U.S.C.A. § 710 et seq., passed to tax abnormally high profits due to large governmental expenses for national defense. H.R. Rep. No. 2894, 76th Congress, 3d Sess., 1-2. The scheme of these laws, although differing in particular provisions is the same. In so far as material in this case under the 1940 Act controlling here, the amount of income subject to an excess profits tax is computed by subtracting from the net income subject to regular income tax an amount equal to 8 per centum of the taxpayer's (equity) invested capital for the taxable year. Pursuant to this scheme it is the taxpayer's right, and to its interest, to include in its invested capital account all assets legally includible therein and thus augment the 8 per centum deduction to which it is entitled under the law; while it is the duty of the Commissioner to exclude therefrom every item to which the taxpayer is not lawfully entitled.

The regular excess profits tax is imposed only upon the income remaining after deducting the 8 per centum of the taxpayer's invested capital. This 8 per centum of income was regarded by Congress as the taxpayer's normal and fair return upon its invested capital.

In the instant case the taxpayer's first contention is that the Commissioner and the Tax Court erred in respect of the amount of its equity invested capital. It argues that the amount of $971,031.01, representing cash and property received from community groups, is includible in its equity invested capital either as a "contribution to capital" within the meaning of § 718(a) (1) and (2) of the Internal Revenue Code or as part of its "accumulated earnings and profits" within the meaning of § 718(a) (4) of the Internal Revenue Code.

The statute, 26 U.S.C.A., reads:

"§ 718. Equity invested capital

"(a) Definition. The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the fol-

lowing amounts, reduced as provided in subsection (b)—

"(1) Money paid in. Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

"(2) Property paid in. Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. * * *

"(4) Earnings and profits at beginning of year. The accumulated earnings and profits as of, the beginning of such taxable year."

The taxpayer argues that in excluding from its capital structure the $971,031.01, and also in excluding the value of the two buildings received from the community groups, the Commissioner acted upon an erroneous conception of the meaning of "normal earnings"-or a normal and fair return on the taxpayer's invested capital, in that he imputed to the meaning of those terms the same meaning which applied to them under the 1917 Act whereas they had an entirely different meaning under that Act from that in the Act of 1940. This difference, it is argued, is due to the difference between what may be included in "invested capital" under the two Acts.

The Supreme Court in La Belle Iron-Works v. United States, 256 U.S. 377, 388, 41 S.Ct. 528, 530, 65 L.Ed. 998, a case arising under the 1917 Act, said: "The word 'invested' in itself imports a restrictive qualification. When speaking of the capital of a business corporation or partnership, such as the act deals with, 'to invest' imports a laying out of money, or of money's worth, either by an individual in acquiring an interest in the concern with a view to obtaining income or profit from the conduct of its business, or by the concern itself in acquiring something of permanent use in the business; * * *."

Under this definition of "invested capital" it is obvious the Commissioner did not err in excluding the money and buildings contributed to the taxpayer here from its invested capital account.

The argument is that that rule is not applicable under the 1940 Act. Our attention has not been called to any case, and we

have found none, in which the Supreme Court has definitely stated what may be included by the taxpayer under all circumstances in its capital account under the 1940 Act. However, in the case of Commissioner v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831, the Court had under consideration the right of a taxpayer to include in its invested capital as "accumulated earnings and profits as of the beginning of such taxable year" the uncollected balances on installment sales made during the taxable year. In its discussion of the meaning of these words of the statute the Court said, 333 U.S. page 497, 68 S.Ct. page 697: "It thus appears that by this method Congress intended, with minor exceptions not here relevant, to impose the excess profits tax on all annual net income in excess of 8% of a corporation's working capital, including its accumulated profits." The Court concluded: "The respondent [taxpayer] can include in its equity invested capital only that portion of its profits from installment payments which it has actually received and on which it has already paid income taxes in the years of receipt."

■ This case, we think, whatever may be the proper conception of normal earnings under the 1940 Act, settles adversely to the taxpayer the contention that the amount of $971,031.01 representing the money and property received from community groups may be included in its invested capital under § 718(a) (4) as "accumulated earnings and profits as of the beginning of such taxable year" for the reason that it did not include any part of that amount in its income tax returns and pay income taxes thereon "in the years of receipt." Cf. Frederick Smith Enterprise Co. v. Commissioner, 6 Cir., 167 F.2d 356, 361.

■ It remains to determine whether the amount of $971,031.01 received as stated, supra, is includible in invested capital as "money previously paid in * * * as a contribution to capital" within the meaning of § 718(a) (1) and (2). The Tax Court, citing its own decision in McKay Products Corporation v. Commissioner, 9 T.C. 1082, and other of its own decisions held it was not includible because "the transferors

were not stockholders" of the taxpayer. This is consistent with the decision of the Supreme Court in the La Belle Iron-Works case, supra, decided under the 1917 Act.

At this point the taxpayer argues that the conception of capital and earnings of a corporation under the 1940 Act differs from the conception thereof in the 1917 Act. To support this point it cites § 35.-718-1 of Regulation 112 relating to the excess profits tax under the Internal Revenue Code, as amended, for the taxable years beginning after December 31, 1941, reading in part:

"If the property was acquired after December 31, 1920, by a corporation from a shareholder as paid-in surplus, *or from any person as a contribution to capital,* then the basis shall be the same as it would be in the hands of the transferor if the transfer had not been made." (Emphasis supplied).

The taxpayer further calls attention to the statement in the Commissioner's brief wherein he says:

"Although the contributions here in question were undoubtedly contributions to the taxpayer's capital in the general sense of that term, so as to distinguish them from its income, they do not constitute 'a contribution to capital' within the meaning of that term as it is used in Section 718(a) (1) and (2) of the Internal Revenue Code * * *."

The regulation called to our attention is not helpful because it does not limit or define the meaning of the capital of a corporation as these words are used in the 1940 Act, and the quotation from the Commissioner's brief serves only to direct attention to the Commissioner's theory that the capital of a corporation, as that term is used in the statute, consists only of the capital as defined in its charter and paid in by the stockholders, and that there can be no "contributions to capital" unless a deficit exists therein, because unless such a deficit exists any contribution to the corporation is necessarily made to "paid-in surplus" within the meaning of § 718(a) (1) and (2), supra. Support for this theory of corporate accounting within the meaning of the revenue laws is found in Detroit Edison Co. v. Commissioner, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286; Willcuts v. Milton Dairy Co., 275 U.S. 215, 48 S.Ct. 71, 72 L.Ed. 247; Edwards v. Douglas, 269 U.S. 204, 46 S.Ct. 85, 70 L.Ed. 235; Van Norman Co. v. Welch, 1 Cir., 141 F.2d 99; Foley Securities Corp. v. Commissioner, 8 Cir., 106 F.2d 731; Musical Instrument Sales Co. v. Anderson, 2 Cir., 40 F.2d 454; and McKay Products Corp. v. Commissioner, 9 T.C. 1082. Until the Supreme Court has construed the 1940 Act otherwise we cannot say that the decision of the Tax Court in this regard is clearly erroneous.

■ Finally, the taxpayer contends that in computing its taxable income for the two fiscal years in question it is entitled to deduct depreciation on the two buildings received directly from the community groups to induce the taxpayer to locate a factory in the community, and that the Tax Court erred in holding otherwise. This identical point was presented to this court recently in the case of C. L. Downey Co. v. Commissioner, 8 Cir., 172 F.2d 810. We there held that a manufacturing company was not entitled in computing its income and excess profits tax to a deduction for depreciation on a factory building paid for with funds contributed by a community group to induce the taxpayer to locate its factory in their community, on the ground that under the statute, 26 U.S.C.A. § 114, depreciation is allowable only on the cost to the taxpayer of the property. We are unable to distinguish the facts in this case from the facts in that case. That decision is, therefore, binding here, requiring an affirmance of the Tax Court on this issue.

The result is that the decision of the Tax Court is reversed on the Commissioner's petition for review and affirmed on the taxpayer's petition, and the case is remanded to the Tax Court.