**NORTH AMERICAN FINANCE CORPORATION OF SAVANNAH**

v.

**The UNITED STATES.**

**No. 166-58.**

United States Court of Claims.
Jan. 11, 1963.

---

Robert Ash, Washington, D. C., for plaintiff; Carl F. Bauersfeld, and L. J. Holroyd, Washington, D. C., were on the briefs.

Robert Livingston, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant; Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

DAVIS, Judge.

Plaintiff, a wholly-owned subsidiary of State Loan and Finance Corporation, is a Georgia company doing a small loan business in Savannah. Its suit for an excess profits tax refund turns on the special manner in which it carried on its loan and thrift activities during the taxable years (1952 and 1953), as permitted by Georgia law.

The applicant for a small loan, once he was approved for credit, signed a "Subscription and Application" form subscribing to a certificate of investment to be issued by the plaintiff in the amount of the prospective loan; this certificate of investment was to be used as collateral for the loan by plaintiff which would be equal to the face amount of the certificate. The applicant was also required at the same time to sign a promissory note referred to in the "Subscription and Application" form; this note, made out to plaintiff, was in payment for the certificate of investment which was simultaneously being purchased; the note bore interest at 8% per annum and was payable in 12 monthly installments; it was secured by the applicant's personal property (usually household furniture or an automobile). The next step was for the applicant to sign a second promissory note payable to plaintiff at the end of 12 months—this was deemed the applicant's promise to pay back the loan made to him —and to assign the certificate of investment (issued in the same amount) back to the plaintiff as collateral for this loan. (The plaintiff then held the certificate.) The due date of this term note was the same as the day on which the final installment was payable on the installment note used to pay for the certificate of investment.

When these forms were completed, the plaintiff lent to the borrower the face amount of the second note (i. e., the term note), less 8% interest discounted in advance and less a 2% service fee. At this stage the borrower had signed two notes payable to plaintiff, one to be paid in 12 monthly installments, the other to be discharged in a lump sum at the end of 12 months. In return, he had received the amount of his loan; and he had also purchased a certificate of investment, which was to be paid for through the installment note and which was held as security for the term note.

If the borrower remitted the installments on the installment note as he was obligated to do, the final payment on that note would be made on the same date as the term note became due (at the end of 12 months). That final payment on the installment note would also complete the borrower's payments on his certificate of investment, and the fully paid certificate would automatically be used to pay off the term note and discharge the borrower's debt to the plaintiff. At that time the plaintiff would pay the borrower the 3% interest provided in the certificate of investment. The borrower could theoretically pay the term note with cash and retain the certificate, but this was not in fact done. It is also significant that, in the taxable years, all the certificates of investment were issued to borrowers under the procedure we have outlined; none of the certificates was sold to or owned by persons not indebted to plaintiff for loans.

During 1952, the first taxable year, there was an average daily difference of $212,342.51, in plaintiff's favor, between the face amount of the outstanding certificates of investment and the unpaid balance on the installment notes used to pay for the certificates. In 1953, this difference was $204,965.13. This money, representing the sums paid (on the average) on the installment notes, was available to plaintiff for its business.

Plaintiff's claim here is that, in computing its excess profits tax credit based on invested capital for 1952 and 1953, it was entitled to include as borrowed capital the face amounts of these certificates of investment. Section 437 of the Internal Revenue Code of 1939, as amended, included 75% of "the average borrowed capital for the taxable year" in making up the invested capital credit; and Section 439 defined "borrowed capital" for this purpose as "[t]he amount of the out-

standing indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. * * *" The position of the Commissioner of Internal Revenue is that the certificates do not come under the provisions of Section 439.

The courts have on several occasions dealt with the problem of whether the concepts of "borrowed capital" or "outstanding indebtedness"—for the excess profits tax credit based on invested capital—include certificates, some more and some less comparable to plaintiff's, issued by small loan and thrift companies. Economy Savings and Loan Co. v. Commissioner, 5 T.C. 543 (1945), modified on other issues, 158 F.2d 472 (C.A.6, 1946); Jackson Finance & Thrift Co. v. Commissioner, 260 F.2d 578 (C.A.10, 1958), reversing 29 T.C. 272 (1957); Commissioner v. Valley Morris Plan and Morris Plan Company of California, 305 F.2d 610, 629 (C.A.9, 1962), cert. denied, 83 S.Ct. 290, reversing 33 T.C. 572 (1959) and 33 T.C. 720 (1960); North American Loan & Thrift Co. No. 2 v. Commissioner, 39 T.C. No. 27, decided Nov. 2, 1962.

The latest decision, North American Loan & Thrift Co. No. 2, is the only one directly in point. That taxpayer is plaintiff's sister corporation, likewise a wholly-owned subsidiary of State Loan and Finance Corporation operating a small loan business in Georgia (at Atlanta); both parties agree that its mode of procedure was exactly like the plaintiff's and its certificates of indebtedness the same. The full Tax Court (with three judges dissenting) ruled that no part of the certificates could be included in borrowed capital. We agree with Judge Raum's opinion for the Tax Court, and need only select and summarize the core of its reasoning. The opinion points out that:

(a) the status of the certificates under Georgia law does not determine the federal question;

(b) "The net effect of coupling certificates with all small loans made by petitioner was to require the borrower to sign two notes to petitioner instead of one for each loan he needed and thereby to pay a net total of interest vastly in excess of the purported 8 percent";

(c) although taxpayer argued that the borrowers, "at the instant they borrow money from petitioner, immediately lend a like amount of money back to petitioner on its certificates", "we can accept no such fiction. Petitioner's customers are borrowers; they are neither lenders nor investors. They have no funds to lend to petitioner's business or to anyone else. They come to petitioner because they need funds, and their need is sufficient that they are willing to pay the price exacted from them through the medium of these inextricably interrelated transactions in order to obtain their loans. * * * [T]he facts show that in every case the substance of the transaction was that petitioner was the lender and its customer was the borrower";

(d) "In reality in every case the money paid by petitioner's borrowers on the installment note constituted merely a partial repayment of the money lent by petitioner to the borrowers. In no case did this money represent new capital lent to petitioner. * * * Petitioner obtained no new, added capital by the use of these forms; it obtained only the repayment of the money it had lent to its customers, with additional interest as an added, important feature"; and, finally,

(e) "We think it clear that petitioner did not in fact intend to borrow money from its customers by the use of its certificates, and certainly its customers did not in fact intend to lend petitioner money by the use of such certificates."

The essence of the Tax Court's ruling,. with which we concur,[1] is that, when the taxpayer's connected series of transactions with its customer are viewed to-

1. The Tax Court also held, alternatively, that, since the taxpayer's liability on the certificates was contingent upon the borrower's paying the term note for which

gether, it is plain that nothing was borrowed by the taxpayer and no additional capital was invested in its business. There is therefore no reason to increase its excess profits tax credit, based on invested capital, by any amount attributable to the certificates.[2]

Petitioner is not entitled to recover. Its petition will be dismissed.

REED, Justice (Retired), and PRETTYMAN, Circuit Judge, sitting by designation, and DURFEE and WHITAKER, Judges, concur.

JONES, Chief Judge, and LARAMORE, Judge, took no part in the consideration and decision of this case.

50 CCPA

they served as "collateral", no definite outstanding indebtedness existed, as required by the statutory definition of borrowed capital. We agree, too, with that conclusion. See C. L. Downey Co. v. Commissioner, 172 F.2d 810, 812 (C.A.8, 1949), affirming 10 T.C. 837, 839–40 (1948); Frazer-Smith Co. v. Commissioner, 14 T.C. 892, 899, 900 (1950); cf. Wm.

A. Higgins Co. v. Commissioner, 4 T.C. 1033, 1043 (1945).

2. On somewhat different facts, the Ninth Circuit recently reached the same result, by a different route, in Commissioner v. Valley Morris Plan and Morris Plan Company of California, 305 F.2d 610, 629 (1962), cert. denied, Dec. 5, 1962 (reversing 33 T.C. 572 (1959) and 33 T.C. 720 (1960)).