RICHARD M. DRACHMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FANCHON DRACHMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDA Q. DRACHMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 32975, 32976, 32977.   Filed December 30, 1954.

*Carl A. Stutsman, Jr., Esq.*, for the petitioners.
*George E. Constable, Esq.*, for the respondent.

## OPINION.

BRUCE, *Judge:* Prior to 1948 petitioners were the owners of 37 out of 345 shares of common stock of a corporation known as Better Homes, Inc. They were also members of a partnership which in order to protect its goodwill was forced in August 1948 to advance $10,000 to the corporation after it had become insolvent. The partnership was given the standing of a general creditor, and at that time the creditors hoped to recover the full amount of their claims. For the sole purpose of placing the creditors in control of the corporation, the members of the partnership received in 1948 100 shares of common stock without further payment, of which 75 shares were issued to petitioners. By the end of 1948 the creditors knew that they could recover only a fraction of their claims.

The principal question is whether the $10,000 which was advanced by the partnership to the corporation in August 1948 represented an expense, a capital contribution, or a loan. The advance had some of the characteristics of each. It was made in the form of a capital contribution in that the members of the partnership received common stock having an aggregate par value equal to the amount of the advance. It had the characteristics of an expense because the part-

nership made the advance for the sole purpose of protecting its reputation and goodwill. And it had the attributes of a loan because the partnership was given the standing of, and was treated as, a general creditor with respect to the advance.

Petitioners contend that the advance was a deductible expense within the purview of section 23 (a) (1) (A) of the 1939 Code.[1] We might agree with the petitioners if the partnership had not been given the standing of a general creditor and the right to reimbursement. In *Glendinning, McLeisch & Co.*, 24 B. T. A. 518, 523, affd. (C. A. 2) 61 F. 2d 950, it was stated:

It is well settled by decisions of this Board that, where the taxpayer makes expenditures under an agreement that he will be reimbursed therefor, such expenditures are in the nature of loans or advancements and are not deductible as business expenses. *George M. Cohan*, 11 B. T. A. 743, affirmed on this point, 39 Fed. (2d) 540; *H. R. McMillan*, 14 B. T. A. 1367; *Henry F. Cochrane*, 23 B. T. A. 202.

In *Dunn & McCarthy, Inc.* v. *Commissioner*, (C. A. 2) 139 F. 2d 242; *Robert Gaylord, Inc.*, 41 B. T. A. 1119; *Edward J. Miller*, 37 B. T. A. 830; *First National Bank of Skowhegan*, 35 B. T. A. 876, and *C. H. White*, 15 B. T. A. 1375, cited by petitioners, and in *Ray Crowder*, 19 T. C. 329, and *E. P. Adler*, 44 B. T. A. 112, the taxpayer, at the time the advancement was made, either did not expect reimbursement or had no hope of being reimbursed more than a small percentage of the amount of the advancement. Here the other creditors, at the time the money was advanced by the partnership, were hopeful that they would be able to recover the full amount of their claims. Petitioners, who have the burden of proving that the advance was an expense and not a loan, have not shown that they were more pessimistic than the other creditors. Cf. *George B. Markle, Jr.*, 17 T. C. 1593, appeal dismissed (C. A. 3, 1953). For the advance to be a loan, it is not necessary that there be an unqualified expectation of repayment. Cf. *Franklin Q. Brown et al.*, 9 B. T. A. 965; *Stange-Elliott Coal Co.*, 4 B. T. A. 745. See also *Dallas Rupe & Son*, 20 T. C. 363; *McKay Products Corporation*, 9 T. C. 1082, affirmed on this point (C. A. 3), 178 F. 2d 639, certiorari dismissed 339 U. S. 961; *Standard Oil Co. of New Jersey*, 7 T. C. 1310, appeal dismissed (C. A. 2); *Thomas J. Avery*, 11 B. T. A. 958.

Respondent contends that the advance was a capital contribution. Whether it was a capital contribution or loan is a question of fact.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

*Sam Schnitzer*, 13 T. C. 43, affd. (C. A. 9) 183 F. 2d 70, certiorari denied 340 U. S. 911. The form of the transaction is not controlling, for, as the Supreme Court pointed out in *John Kelley Co.* v. *Commissioner*, 326 U. S. 521, "So-called stock certificates may be authorized by corporations which are really debts, and promises to pay may be executed which have the incidents of stock."

After considering all of the facts, we are of the opinion that the instant transaction was a loan rather than a capital contribution. The stock was issued to the members of the partnership at the insistence of the attorney for the other creditors for the sole purpose of allowing the creditors to obtain control of the corporation. The stock had little or no value and was issued after the partnership had established its position as a general creditor. The partnership could expect reimbursement only as a general creditor and not as a stockholder.

This Court was presented with a similar situation in *Grant G. Simmons*, 4 T. C. 478. There the taxpayer advanced $10,000 to a corporation. The taxpayer became an unsecured creditor in that amount and also received 390 shares of stock without further payment. We found that the stock was received in lieu of interest and to give the taxpayer and others making similar advances an interest in and control of the corporation in order to make the repayment of the loans more likely. We held that the full amount of the advance was a loan.

As the debt created by the advance to the corporation did not become worthless within the taxable year 1948, petitioners are not entitled to a business bad debt deduction for that year under section 23 (k) (1) of the 1939 Code.[2] Cf. *Loewi & Co.*, 23 T. C. 486. See also *Stuart Bart*, 21 T. C. 880. But as petitioners have protected themselves by deducting the unrecovered balance in their 1951 individual income tax returns, no undue hardship should result.

The remaining issue for decision is whether petitioners are entitled to a worthless stock deduction under section 23 (g) of the 1939 Code,[3]

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
\* \* \* \* \* \* \*
(k) BAD DEBTS.—
(1) GENERAL RULE.—Debts which become worthless within the taxable year ; \* \* \*

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
\* \* \* \* \* \* \*
(g) CAPITAL LOSSES.—
\* \* \* \* \* \* \*
(2) SECURITIES BECOMING WORTHLESS.—If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets.
(3) DEFINITION OF SECURITIES.—As used in this paragraph (2) of subsection the term "securities" means (A) shares of stock in a corporation, and (B) rights to subscribe for or to receive such shares.

with respect to the 37 shares of Better Homes, Inc., common stock which they acquired prior to 1948. The question is one of fact. *M. Rea Gano*, 19 B. T. A. 518. We have found that the corporation was a going concern and that the stockholders had some equity and their stock some value at the beginning of 1948. During the year 1948 the corporation became insolvent and the creditors assumed control of the corporation. The creditors planned to complete the houses then under construction and to liquidate the remaining assets of the corporation in order to satisfy their claims. At the end of 1948 the creditors knew that they could recover only a fraction of their claims, and there was no reasonable possibility that the stockholders would realize anything on their shares. On June 15, 1949, the remaining assets, amounting to only a fraction of the creditors' claims, were transferred to a creditors' trustee in discharge of the corporation's indebtedness. These facts establish that the stock became worthless in the year 1948 within the meaning of section 23 (g), and petitioners are entitled to deduct the cost of their original 37 shares as a long-term capital loss. Cf. *J. Harvey Ladew*, 22 B. T. A. 443; *C. E. Conover Co.*, 7 B. T. A. 1234.

*Decisions will be entered under Rule 50.*