Ernest E. and Virginia E. Dison v. Commissioner.
Dison v. Commissioner
Docket No. 5619-63.
United States Tax Court
T.C. Memo 1965-150; 1965 Tax Ct. Memo LEXIS 179; 24 T.C.M. (CCH) 794; T.C.M. (RIA) 65150; June 1, 1965
Gerard J. O'Brien, for the petitioners. Bernard J. Boyle, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioners' 1959 income tax in the amount of $4,062.84. The issues are whether certain advances made by petitioner Ernest E. Dison in 1961 to his wholly-owned corporation were contributions to capital or loans, and, if loans, were they deductible as business bad debts in 1961 when later that year the corporation went into bankruptcy? Findings of Fact Ernest E. Dison, herein sometimes referred to as petitioner, and Virginia Dison filed joint Federal income tax returns for the taxable years 1958, 1959 and 1961 with the district director of internal revenue, Indianapolis, Indiana. *180 Petitioner has been in the heating and air conditioning business since the spring of 1948. He operates a sole proprietorship in Indianapolis, Indiana, which is named Dison Heating and Air Conditioning Company. The business consists primarily of retail sales and installation of Lennox furnaces, heating equipment, air conditioning and service in residences. During the year 1961 the Dison Heating Company maintained an inventory with an approximate worth of $25,000. Dart Heating and Air Conditioning, Inc., herein referred to as Dart Heating Company, was a corporation located in Indianapolis, Indiana. Prior to March 1961 it had been in business one or two years. Its business was primarily the installation of Chrysler heating equipment and servicing, essentially in heating. In March 1961 the outstanding shares of Dart Heating Company, which consisted of 51 shares of common stock, were held by Hubert L. Joice, a long-time acquaintance of petitioner. On or about March 3, 1961, petitioner and Hubert L. Joice entered into an agreement whereby petitioner purchased the outstanding shares of Dart Heating Company. The agreement provides as follows: THIS AGREEMENT, made and entered into *181 this 3rd day of March, 1961, by and between HUBERT L. JOICE, hereinafter referred to as Party of the First Part, ERNEST E. DISON, hereinafter referred to as Party of the Second Part, and DART HEATING AND AIR CONDITIONING, INC., hereinafter referred to as Party of the Third Part, Witnesseth: WHEREAS, said Party of the First Part is a Director and President of the said Dart Heating and Air Conditioning, Inc., and is the owner of fifty-one (51) shares of the Common Stock of said Corporation, and WHEREAS, said Party of the Second Part has agreed to purchase the said stock from Party of the First Part for the total sum of One Thousand Dollars ($1,000.00), and to assume all Liabilities and Debts of said Dart Heating and Air Conditioning, Inc., Party of the Third Part, and WHEREAS, said Party of the First Part has agreed to continue to act as an officer and an employee of said Corporation, NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS: 1. That said Second Party shall pay to First Party the sum of One Thousand Dollars ($1,000.00) as and for the full purchase price for said fifty-one (51) shares of the Common Stock of said Corporation, which Party of the First Part represents to *182 be all of the outstanding stock issued by said Corporation. 2. That said Hubert L. Joice shall continue in the active management of said Corporation and shall have and receive as and for his salary a commission equal to ten per cent (10%) of all sales made by him, payable weekly, plus a three per cent (3%) override on the gross receipts, payable at the end of each month. 3. That in event said Corporation shall become solvent within one (1) year from this date and shall have paid the sum of at least Two Thousand Five Hundred Dollars ($2,500.00) as and for the salary of said Ernest E. Dison within said time, then and in such event the Corporation agrees to issue forty-nine (49) shares of its Common Stock to said Hubert L. Joice. It is further agreed that thereafter the salaries of said Ernest E. Dison and Hubert L. Joice shall be equal. * [* By an interlineation which is difficult to read, it appears that the one-year period provided in this clause is reduced to seven months.] 4. That said Party of the First Part agrees to expend his full time and best efforts in behalf of said Corporation for and during the said period of one (1) year and shall not engage in any other business *183 or land his support or aid to any other business during said time. IN WITNESS WHEREOF, the Parties have hereunto subscribed their names on the date first above written. At the time petitioner acquired the outstanding shares of Dart Heating Company it was insolvent to the extent of $10,000 to $15,000. Beginning in March 1961, petitioner, through the books and records of his proprietorship, Dison Heating and Air Conditioning Company, made advances in the form of cash to Dart Company, as follows: Date
Amount
May 11, 1961
$ 400.00
June 19, 1961
791.00
July 7, 1961
772.15
Oct. 13, 1961
1,568.82
Total
$3,531.97 On the books and records of Dison Heating and Air Conditioning Company the cash advances were described as loans. In addition, on June 12, 1961, a check was written on the account of Dison Heating and Air Conditioning Company in the amount of $608, payable to Chrysler Airtemp for the benefit of Dart Heating Company. From March 1961 through November 1961, in addition to the cash advances and the Chrysler Airtemp check, petitioner advanced in the form of materials and supplies for the benefit of Dart Hating Company the amount of $8,011. This type of *184 advance would primarily represent items which Dart Heating Company would acquire from a supplier other than petitioner and have the cost charged to the account of petitioner. Petitioner, from March 1961 through November 1961, advanced for the benefit of Dart Heating Company, in addition to the foregoing, the amount of $1,026.01, broken down as follows: Invoice No.
Amount
Description
8602
$ 31.90
Heating permits
8800, 8879
16.00
Heating permits
9354
5.00
Heating permits
9595
94.80
Advertising
10003
10.00
Dues - Better Business
Bureau
10078
91.20
Advertising
10319
91.81
Insurance premiums -
E. E. Dison, Herb
Joice
10320
222.90
Advertising
10497
199.40
Advertising
1005
35.40
Advertising
1617
7.60
Advertising
1617
220.00
American Fletcher
Total
$1,026.01
A record of petitioner reflects payments by Dart Heating Company to petitioner in the amount of $4,214.05, plus credits of $249.32, or charges against the advances in the amount of $4,463.37. During the same months in 1961 advances in the form of sales at cost were also made to Dart Heating Company in the amount of $2,559.31. This would represent advances *185 to Dart Heating Company from petitioner's inventory, where the items would be picked up at Dison's warehouse. Recapitulation of the foregoing advances to Dart Heating Company is as follows: Cash advances
$ 3,531.97
Check to Chrysler Airtemp for
benefit of Dart
608.00
Purchases by Dart charged to pe-
titioner's account
8,011.00
Payment by petitioner of certain
expenses of Dart
1,026.01
Advances, at cost, from petition-
er's inventory
2,559.31
Total
$15,736.29
Less repayments or credits
4,463.37
Total
$11,272.92 [1]
The adjustment, as set forth in the notice of deficiency, is as follows: (b) It is determined that the amount of $15,316.95 claimed as business bad debts for the taxable year ended December 31, 1961 is not deductible to the extent of $10,836.26 under the provisions of section 166 of the Internal Revenue Code *186 of 1954 or under any other section of the Code. The deficiency has been determined for the year 1959 only because the issue affects the amount of net operating loss in the year 1961 to be carried back to the years 1958 and 1959. The Dart Heating Company went out of business in the latter part of 1961. Opinion In March of 1961 petitioner, who was engaged in the heating and air conditioning business, acquired all of the stock and an insolvent corporation, engaged in the heating business. Between March and November of 1961 petitioner made advances to the corporation in the form of cash, in the form of transfers of merchandise and equipment at cost, and in the form of payments of certain debts on behalf of the corporation. The corporation went into bankruptcy in November of 1961 and if the advances were loans it is admitted they became worthless in 1961. Petitioner claims he is entitled to deduction as business bad debts under section 166, Internal Revenue Code of 1954. Petitioner had the burden of showing the advances were not contributions to capital and that they were loans created in the course of his business. We are of the opinion that he sustained *187 his burden of showing the advances were loans but he failed in his burden of showing they were created or acquired in the course of his business so as to make the worthlessness of said debts in 1961 a business bad debt loss. The character of petitioner's advances, whether loans or contributions to capital, depends upon a consideration of all of the facts. Gilbert v. Commissioner, 262 F. 2d 512. The record shows petitioner's advancements to the corporation were characterized as loans or as intercompany transactions on the books of petitioner's business. Petitioner used invoices to record property advancements and even advancements of cash would be on invoices marked "loans". The advancements have all of the characteristics of loans. They were advances of cash to enable the corporation to pay its current obligations followed by some repayments; they were payments of the corporation's obligations under circumstances where the corporation was obligated to repay and did repay in part; and they were transfers of merchandise at cost with invoices used to record the transactions. Petitioner testified that the heating business does not need substantial capital, that he intended *188 all of these advancements to the corporation as loans and that he expected to get his advancements repaid. He had a high opinion of Joice's ability in the heating business and he testified he felt things might have worked out if there had not been some undisclosed liabilities and Joice had not suffered two heart attacks that year. He testified he made the advancements in a desperate effort to keep the corporation going until August when the heating season opened and thereafter to enable it to stay in business but its many creditors closed it up in November. It fairly appears from all of the evidence that petitioner harbored the expectation of repayment. "For the advance to be a loan, it is not necessary that there be an unqualified expectation of repayment." Richard M. Drachman, 23 T.C. 558, p. 562. It is enough that the record shows that petitioner was hopeful that he would be able to recover the full amount of his advancements. The foregoing brief summation of the evidence convinces us that the advances were loans and not capital investments. It is our conclusion that to the extent these advances were not repaid, they constituted bona fide debts owing by the corporation *189 that became worthless in 1961. There was no evidence and there is no argument advanced that petitioner was engaged in the business of making loans or financing business enterprises or promoting corporate enterprises generally. It is well established that in the year 1961 petitioner was engaged in the heating and air conditioning business. He operated the Dison Heating and Air Conditioning Company which was a sole proprietorship entirely owned by him. Before he can take the worthless debts owed by the corporation as a business bad debt loss he must show the debts were in some manner created or acquired in the course of his individual heating and air conditioning business. There must exist a proximate relationship of the bad debt loss to the conduct of his individual heating and air conditioning company. Dominick J. Salomone, 27 T.C. 663. There is just no evidence at all of any connection between the corporation and petitioner's sole proprietorship business. Petitioner was not asked why he acquired the corporation. At one point he was asked: "What purpose, if any, did you have in making these sales to Dart Heating Company? The question had reference to transfers of merchandise *190 at cost, and petitioner replied: "It helped improve my volume. It helped me to get a better bracket and keep my volume up. I had to sell them. Their credit was just about out and they couldn't buy anyplace in the city without cash. They had to pull out of my inventory." This is the only portion of the record that petitioner refers to as evidence to establish the requisite connection between petitioner's individual business and the corporation's business. It is wholly insufficient to show petitioner's bad debt losses were proximately related to his individual business. There is nothing in the record to indicate the corporation handled Lennox furnaces. Petitioner testified the corporation was a Chrysler furnace dealer. The so-called "sales" of merchandise were not true business sales made in the conduct of petitioner's business to the corporation. They were transfers from inventory and petitioner admits on brief that they are to be treated the same as other advancements. There is no further explanation of the "better bracket" benefit. We assume it meant petitioner would get a lower unit price from his supplier if he could buy in large quantities and he could buy in larger quantities *191 if he could keep the corporation alive and sell supplies to it. It may sound unrealistic to say a taxpayer engaged in the heating business is in competition with his wholly-owned corporation operating a heating business in the same area. Yet that is exactly the situation that exists when we realize the corporation and its stockholder are two different business persons and a competitor is defined as "one who is engaged in selling (or buying) goods or services in the same market as another." [2] Ordinarily advances from the individual to the corporation would not inure to the benefit of the individual's business. There are cases where, because of special circumstances, the continued business life of the corporation serves the individual's business. See Stuart Bart, 21 T.C. 880, where advertising agent's advancement to a key corporate client was held a business loan and J. T. Dorminey, 26 T.C. 940, where taxpayer in the produce business made advances to a faltering corporation in the banana transport business to protect his source of produce supply and the advancements were held business loans. No such special circumstances are shown by this record. *192 The testimony of petitioner and his accountant and bookkeeper was all designed to establish the advancements as loans and not contributions to capital. We have held they were loans. All that we have on the issue as to whether they were business loans is this previously mentioned unclear and casual reference at one place in petitioner's testimony that one reason he made sales of merchandise at cost was to improve his volume; and even here he immediately added that another reason was because the corporation had no credit and had to get supplies from his inventory. We are inclined to think the advancements to rescue the corporation were designed to serve the individual purpose of petitioner as an investor who owned all of its stock. It cannot be said this record shows the advancements were designed to serve his heating business. The mere statement that the sales to the corporation, that was actually a business competitor, would swell his volume without any explanation of just how increased volume would benefit him in his business is insufficient to show the advancements were incidental to or proximately related to petitioner's trade or business. Petitioner is not entitled to a business *193 bad debt loss. The most that the record shows is that petitioner would be entitled to a nonbusiness bad debt loss under section 166(d), Internal Revenue Code of 1954. Decision will be entered under Rule 50. Footnotes
1. There is some discrepancy between the deficiency notice amount and the amount of the actual loss as shown by the books and records. Nobody seemed interested in reconciling the difference and, since the disallowance is less than the advances indicated by the records in evidence or less than petitioner's accountant's figure, we will not search for the error.↩
2. Quotation from Webster's New International Dictionary, Second Edition.↩